# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON L. AMICO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT MILLER,<br><br>　　　　Defendants. | Case No. 1:21-cv-00061-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION AS FRIVOLOUS AND DIRECTING CLERK OF THE COURT TO ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>(ECF No. 1)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Jason L. Amico ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's complaint, filed on January 15, 2021. (ECF No. 1.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is currently housed at the California Substance Abuse and Treatment Facility. Plaintiff names Correctional Officers Robert Miller and Dylan Stuart as defendants in this action. Plaintiff states that he did not file a grievance because "It is an actual lawsuit. The two camera's [sic] are still lodge [sic] in the cerebrum part of my brain." (Compl., 2,[1] ECF No. 1.)

Plaintiff alleges that on March 28, 2016, while he was housed at the California

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1  Correctional Institution ("CCI") in Tehachapi, inmates began making derogatory comments as
2  they walked by his cell door. (Id. at 3.) Plaintiff reported this to staff members assigned to the
3  building and they responded that it was nothing for him to be concerned about and that nothing
4  would happen. (Id.) The statements continued through April and Plaintiff bumped his head on
5  the metal rim of his bunk and split his head open. (Id.) He lost a good amount of blood but was
6  able to wrap a towel around his head to stop the bleeding. (Id. at 3-4.)

7  Plaintiff again reported that inmates were making negative comments as they walked by
8  his cell door. (Id. at 4.) Plaintiff was again told that it was nothing to worry about. (Id.)
9  Plaintiff split his head open again causing further loss of blood. (Id.) He did not bother to seek
10 medical attention because he received inadequate medical care at CCI. (Id.)

11 Plaintiff received a tuberculosis shot on April 27th, and staff members began smiling at
12 him and the harassment by other inmates continued. (Id.) Plaintiff felt completely helpless and
13 had a complete mental breakdown. (Id.) He began cutting his wrists. (Id.) He was placed on
14 suicide watch where he was injected with something from a tetanus shot that he was given due to
15 cutting himself. (Id.) Plaintiff was then transferred to the crisis unit at Corcoran State Hospital
16 ("CSH"). (Id.)

17 Plaintiff began hearing derogatory statements as medical staff and correctional officers
18 walked by his cell door. (Id.) Plaintiff complained to medical staff asking if this was some kind
19 of joke. (Id.) They responded they had no idea what he was talking about. (Id.) This continued
20 and Plaintiff felt like he was losing his mind. (Id.)

21 On May 26th, Plaintiff was transferred out of a crisis bed and sent to Salinas Valley State
22 Prison ("SVSP"). (Id.) He began hearing voices coming from outside his cell door, but there
23 was no one on the tier. (Id.) This continued through the month of June and he felt that staff
24 members were putting paperwork into his C-file and reported it to his father. (Id. at 4-5.)
25 During visiting hours on June 22, 2016, Plaintiff began hearing loud voices inside his head, but
26 was unable to understand what they were saying. (Id. at 5.) He felt completely disoriented and
27 oblivious to what was happening. (Id.) He was suffering from a post traumatic stress episode.
28 (Id.)

On June 29th, Plaintiff was told that the state had placed a mini camera with a tiny chip inside his head which was lodged on the cerebrum part of his brain. (Id.) During the beginning of July 2016, it was explained to Plaintiff that they had placed cameras and micro chips in his cell to make the voices sound like they were coming from outside his cell. (Id.) This was to come up with a reason why they had to place the mini camera in the tuberculosis shot on April 27, 2016. (Id.) Another mini camera without the micro chip was placed using the tetanus shot that he was given after cutting his arms. (Id.) This was done to play with his brain and test new technology that the state has in its possession. (Id.)

Plaintiff alleges that his right to adequate medical care has been violated by exploiting his vulnerability and using his case factors to do this to him. (Id.) Plaintiff states that the mini camera is lodged in the cerebrum part of his brain between his eyelids. (Id. at 6.) Plaintiff delayed bringing this action because he was in a very disassociated state of mind and was very disoriented after his traumatic ordeals at CCI and CSH. (Id.) He was guilt ridden over what would be used if he were to bring suit. (Id.) He was having a hard time comprehending what all this was about and why due to the fact that he had split his head open two times and lost a lot of blood and did not receive proper medical care. (Id.) Plaintiff had sunk into a deep depression and felt that once time ran out this would all be over. (Id.) It was not, so he took it upon himself to write out the civil rights complaint, even though there is hardly any money to gain from this. (Id.) Plaintiff wants to settle this lawsuit without going through the litigation process and seeks for "the state to bring in the box containing the two buttons to remove both of the cameras lodge [sic] on the cerebrum part of [his] brain." (Id. at 6-7.)

## III.

## DISCUSSION

Plaintiff's claims in this action are facially frivolous as the "facts" alleged in Plaintiff's complaint are not grounded in reality. Plaintiff alleges that he received a tetanus shot and a tuberculosis shot and through those shots was injected with mini cameras that have lodged in his brain. By this action he seeks to have the mini cameras removed.

A complaint is frivolous where it lacks an arguable basis either in law or in fact. Neitzke

v. Williams, 490 U.S. 319, 325 (1989).  When applied to a complaint, frivolous "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Neitzke, 490 U.S. at 325. "A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." Denton v. Hernandez, 504 U.S. 25, 32–33 (1992) (internal punctuation and citations omitted).

The claims in Plaintiff's complaint fall within the category of fantastic or delusional scenarios and should be dismissed.  See Waldrop v. Dep't of Corr., No. CIV S-06-1260DFLEFBP, 2006 WL 2926754, at *2 (E.D. Cal. Oct. 11, 2006) (dismissing parolee's claim that CDCR had placed radio transmitters in his ears and uses satellite to monitor him); Simon v. CDCR, No. CIV S-10-2555 GEB, 2012 WL 892281, at *2 (E.D. Cal. Mar. 14, 2012) (dismissing claim that hundreds of prison officials across the state have used a "mind-bending" device utilizing penilephethymegraph/GPS technology to torture him and to modify his behavior); Rutledge v. Foster, No. 218CV1847WBSDBP, 2019 WL 175281, at *3 (E.D. Cal. Jan. 11, 2019) (dismissing action at screening alleging that individuals sexually molest him via a police issue satellite); Monroe v. Arpaio, No. CV053441PHX-NVW(VAM), 2005 WL 3054067, at *3 (D. Ariz. Nov. 14, 2005) (dismissing with prejudice claim that plaintiff had a mind-reader and still has a mind-reader device on him which causes constant duress); Payne v. Contra Costa Sheriff's Dep't, No. C 02-2382CRB(PR), 2002 WL 1310748, at *1 (N.D. Cal. June 10, 2002) (dismissing claim that Sheriff's Department was using telepathy/mind control to harass and torture plaintiff).

The Court has carefully considered the claims in the complaint to determine if there are any facts that could be alleged to state a claim in this action and finds that granting leave to amend the complaint would be futile.  See Lopez v. Smith, 203 F.3d 1122, 1137 (9th. Cir. 2000) (dissenting opinion) (a district court may dismiss a complaint without an opportunity to amend if the court concludes that the action is frivolous).  Although Plaintiff makes a conclusory allegation that he received inadequate medical care at CCI he fails to allege any facts that would lead the Court to infer such.  Plaintiff merely alleges that on two occasions he split open his head and he did not seek medical care because of the inadequacy of the medical care.  The Court finds that granting leave to amend would be futile.  See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th

Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.")

The Court recommends that Plaintiff's complaint be dismissed without leave to amend as frivolous.

## IV.

## CONCLUSION AND RECOMMENDATIONS

Review of Plaintiff's allegations in this action demonstrate that complaint is frivolous and it would be futile to grant Plaintiff an opportunity to file an amended complaint.  Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's complaint be dismissed without leave to amend as frivolous.

The Clerk of the Court is HEREBY DIRECTED to assign this matter to a district judge.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **thirty (30) days** of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 11, 2021**

UNITED STATES MAGISTRATE JUDGE